# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE ALFREDO MEJIA HERNANDEZ,<br>Petitioner,<br>v.<br>DIRECTOR OF THE CALIFORNIA PROCESSING CENTER,<br>Respondent. | Case No. 1:26-cv-06135-SAB-HC<br>A-Number: 216-608-387<br>ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS, DIRECTING RESPONDENTS TO IMMEDIATELY RELEASE PETITIONER, TERMINATING PENDING MOTIONS AS MOOT, AND DIRECTING CLERK OF COURT TO CLOSE CASE |

Petitioner is an immigration detainee proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. The parties have consented to the jurisdiction of a United States magistrate judge. (ECF Nos. 7, 8, 10.)

## I.

## BACKGROUND

Petitioner is a citizen of Honduras who entered the United States on March 24, 2018 and was not admitted or paroled after inspection by an immigration officer. (ECF No. 9 at 5, 23.[1]) On March 25, 2018, the Department of Homeland Security ("DHS") issued a notice to appear. (Id. at 23.) On March 27, 2018, Petitioner was released on an order of release on recognizance. (Id. at 13–16.) On April 17, 2024, Petitioner's removal proceedings were dismissed without prejudice on DHS's motion. (Id. at 27–28.)

[1] Page numbers refer to the ECF page numbers stamped at the top of the page.

Petitioner alleges that he has a pending asylum application and a work permit. On June 7, 2026, Petitioner was arrested for a broken light on his vehicle. (ECF No. 1 at 7.) On June 8, 2026, DHS issued an administrative warrant and a notice to appear. (ECF No. 9 at 8, 9.)

On August 3, 2026, Petitioner filed a petition for writ of habeas corpus challenging his detention on due process grounds. (ECF No. 1.) The Court construed the petition as also "raising claims challenging Petitioner's re-detention and the statutory authority of Petitioner's detention." (ECF No. 4 at 1.) On August 26, 2026, Respondent filed a response. (ECF No. 9.)

**II.**

**DISCUSSION**

The Court finds that issuance of this order is appropriate despite the time for Petitioner to file a reply to Respondents' response having not yet expired.

Respondent argues that "[d]etention in this case was pursuant to 8 U.S.C. § 1225(b)(2)(A), and Respondent respectfully maintains position that such provision governs here." (ECF No. 9 at 1.) However, as acknowledged by Respondent, Respondent's position has been rejected by the Ninth Circuit in Rodriguez Vazquez v. Bostock, --- F.4th ----, 2026 WL 2196424 (9th Cir. July 30, 2026). Accordingly, § 1226(a), not § 1225(b)(2)(A), governs Petitioner's detention.

Additionally, Petitioner asserts that his detention violates due process. (ECF No. 1 at 6–7.) "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas v. Davis, 533 U.S. 678, 693 (2001). "Even when the government has discretion to detain an individual, its subsequent decision to release the individual creates 'an implicit promise' that she will be re-detained only if she violates the conditions of her release." Garro Pinchi v. Noem, No. 25-CV-05632-PCP, --- F. Supp. 3d. ----, 2025 WL 3691938, at *30 (N.D. Cal. Dec. 19, 2025) (citing Morrissey v. Brewer, 408 U.S. 471, 482 (1972)). "Other courts, including this Court, have held similarly." J.E.H.G. v. Chestnut, No. 1:25-cv-01673-JLT-SKO, 2025 WL 3523108, at *10 (E.D. Cal. Dec. 9, 2025) (citing Doe v. Becerra, No. 2:25-CV-00647-DJC-DMC, 2025 WL 691664, at *4 (E.D. Cal. Mar. 3, 2025)). "Accordingly, a noncitizen released from custody pending removal

proceedings has a protected liberty interest in remaining out of custody." Salcedo Aceros v. Kaiser, No. 25-CV-06924-EMC (EMC), 2025 WL 2637503, at *6 (N.D. Cal. Sept. 12, 2025).

The Court also finds the reasoning of Kharitonova v. Albarran, No. 3:26-CV-01362-JSC, 2026 WL 531441 (N.D. Cal. Feb. 25, 2026), persuasive. Kharitonova concerned a noncitizen who entered the United States on a nonimmigrant visa in 2012, filed her application for asylum and withholding of removal within one year of her arrival, had her asylum case referred to the Executive Office for Immigration Review, which issued a Notice to Appear, resided continuously in the United States, attended all scheduled hearings, was preparing to appear for her merits hearing scheduled for December 22, 2026, and in February 2026 "was detained on the street in front of the home in San Francisco where she work[ed] as a full-time nanny." Id. at *1. The district court held that the "government's decision not to detain Petitioner 'when it processed her asylum application, took her biometrics, referred her asylum case to EOIR, and advised her to appear for multiple hearings over a period of years,' . . . gave rise to 'a liberty interest on Petitioner's part that she would remain free unless she violated her conditions of release.'" Id. at *2 (citation omitted). The court rejected the "government's insistence Petitioner lacks a liberty interest because it never before sought to detain her" as "specious" and "unsupported by any legal authority" because "[a]lthough the government did not detain and then release her, it made a decision *not* to detain her in the first place; Petitioner thus has the same liberty interest in her continued freedom as an individual initially detained." Kharitonova, 2026 WL 531441, at *2. See also Villanueva-Montanez v. Lyons, No. 2:26-cv-00954-DAD-CKD, 2026 WL 797930, at *1 (E.D. Cal. Mar. 23, 2026) ("[T]he release (or decision not to detain) is 'based on an evaluation[,]' allows for 'a relatively normal life[,]' and as a result the parolee or petitioner 'relied on at least an implicit promise' that the parole or decision not to detain will be revoked only if he fails to live up to the applicable 'conditions.'" (first alteration added) (quoting Morrissey v. Brewer, 408 U.S. 471, 482 (1972))).

Here, Petitioner was previously released on an order of release on recognizance before his previous removal proceedings were dismissed without prejudice. Petitioner has a pending asylum application and a work permit. Accordingly, the Court finds that Petitioner has a

protected liberty interest in his continued freedom. "Thus, the Court must evaluate the three-part test set forth in *Mathews v. Eldridge,* 424 U.S. 319, 334-335 (1976), to determine whether the procedures (or lack thereof) that have been applied to Petitioner are sufficient to protect the liberty interest at issue." J.E.H.G., 2025 WL 3523108, at *11.

> [I]dentification of the specific dictates of due process generally requires consideration of three distinct factors. First, the private interest that will be affected by the official action; second, the risk of erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail.

Mathews, 424 U.S. at 334.

As to private interest, it "is beyond dispute" that Petitioner's interest here is "fundamental." Hernandez v. Sessions, 872 F.3d 976, 993 (9th Cir. 2017) (citing Foucha v. Louisiana, 504 U.S. 71, 80 (1992)). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process] Clause protects." Zadvydas, 533 U.S. at 690. Turning to the second factor, the risk of erroneous deprivation of Petitioner's liberty is high where, as here, Petitioner has not received any bond or custody redetermination hearing before a neutral decisionmaker with authority to grant bond. See Kharitonova, 2026 WL 531441, at *3; Kakkar v. Chestnut, No. 1:25-CV-1627 JLT SAB, 2025 WL 3638298, at *7 (E.D. Cal. Dec. 15, 2025); A.E. v. Andrews, No. 1:25-cv-00107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025). "Finally, as other courts have done, this Court concludes that the government's interest in detaining Petitioner without proper process is slight." J.E.H.G., 2025 WL 3523108, at *12. Accordingly, the Mathews factors weigh in favor of a bond hearing.

Based on the foregoing, the Court finds that Petitioner has a protected liberty interest in remaining out of custody and his detention without a bond hearing violates due process. The Court now considers whether a pre-deprivation or post-deprivation bond hearing is appropriate based on the facts of this case.

> The Supreme Court has held that "the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property." *See Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (emphasis in original). However, the Court also

recognized that there may be situations that urgently require arrest, in which a prompt post-deprivation hearing is appropriate. *Id.* at 128 (noting there may be "special case[s]" where a pre-deprivation hearing is impracticable); *Guillermo M. R. v. Kaiser*, No. 25-CV-05436-RFL, 2025 WL 1983677, at *9 (N.D. Cal. July 17, 2025) ("absent evidence of urgent concerns, a *pre*-deprivation hearing is required to satisfy due process, particularly where an individual has been released on bond by an IJ"). The rapidly developing caselaw on this subject gives limited guidance as to where this line should be drawn. Some courts that have addressed detention-related habeas petitions brought by persons released with enhanced supervision conditions have required pre-deprivation process, but in somewhat different circumstances. In *E.A.T.-B. v. Wamsley*, No. C25-1192-KKE, 2025 WL 2402130, at *4 (W.D. Wash. Aug. 19, 2025), the district court ordered the release of a petitioner arrested by ICE immediately after appearing in immigration court. That court agreed with the petitioner that ICE's post hoc explanation that violations warranted his detention was pretextual, given that ICE first became aware of petitioner's alleged violations a few hours before his immigration hearing, DHS did not raise those violations at the hearing or argue the petitioner should be detained for any reason, and the petitioner was then provided multiple, inconsistent justifications for his arrest. *Id.* In *Arzate v. Andrews*, No. 1:25-CV-00942-KES-SKO (HC), 2025 WL 2230521, at *7 (E.D. Cal. Aug. 4, 2025), converted to preliminary injunction sub nom, 2025 WL 2411010, at *1 (E.D. Cal. Aug. 20, 2025), the court ordered immediate release of in immigration detainee who had been in compliance with his conditions of release, even though he had incurred a misdemeanor arrest while on parole, in part because no charges were ever filed.

In contrast, this Court ordered a parole revocation hearing in *Martinez Hernandez v. Andrews*, No. 1:25-CV-01035 JLT HBK, 2025 WL 2495767 (E.D. Cal. Aug. 28, 2025), where the petitioner's records indicated numerous violations. Though Martinez Hernandez offered explanations for the violations and there was a dispute of fact as to whether the violations occurred, ICE's reliance upon those violations was "not obviously pretexual." *Id.* at * 12 ("If Respondent's view of the facts is correct, it is at least arguable that providing Petitioner with notice and a pre-deprivation hearing would have been impracticable and/or would have motivated his flight."). As this Court noted in *Martinez Hernandez*:

> In similar circumstances, courts have refused to release the petitioners but have ordered timely bond hearings. *Carballo v. Andrews*, No. 1:25-CV-00978-KES-EPG (HC), 2025 WL 2381464, at *8 (E.D. Cal. Aug. 15, 2025), citing *Perera v. Jennings*, et. al, No. 21-CV-04136-BLF, 2021 WL 2400981, at *5 (N.D. Cal. June 11, 2021); *Pham v. Becerra*, No. 23-CV-01288-CRB, 2023 WL 2744397, at *6 (N.D. Cal. Mar. 31, 2023). "[A]llowing a neutral arbiter to review the facts would significantly reduce the risk of erroneous deprivation." *Guillermo M. R. v. Kaiser*, No. 25-CV-05436-RFL, 2025 WL 1983677, at *8 (N.D. Cal. July 17, 2025). Thus, the Court concludes that prompt, post-deprivation process is required here.

*Id.*

<u>J.E.H.G.</u>, 2025 WL 3523108, at *11–12.

Here, there is nothing in the record before this Court establishing that Petitioner previously violated any conditions of his release. Respondent does not argue that Petitioner's most recent detention was based on any criminal conduct or that Petitioner is now considered a

flight risk or danger to the community. Accordingly, the Court finds that a pre-deprivation hearing is appropriate based on the facts of this case and that Petitioner's immediate release is warranted. See Villanueva-Montanez, 2026 WL 797930, at *2; Kharitonova, 2026 WL 531441, at *4.

## III.

## ORDER

Based on the foregoing, the Court HEREBY ORDERS that:

1. The petition for writ of habeas corpus is GRANTED.
2. Respondents SHALL IMMEDIATELY RELEASE Petitioner Jose Alfredo Mejia Hernandez (A-Number: 216-608-387).
3. Respondents are ENJOINED AND RESTRAINED from re-arresting or re-detaining Petitioner absent compliance with constitutional protections, which include, at a minimum, pre-deprivation notice of at least seven days before a pre-deprivation hearing at which the government will bear the burden of demonstrating by clear and convincing evidence that he is likely to flee or pose a danger to the community if not arrested.[2]
4. Respondents SHALL provide Petitioner with a copy of this Order upon his release.
5. The Clerk of Court is DIRECTED to serve the California City Immigration Processing Center with a copy of this Order.
6. The Clerk of Court is DIRECTED to CLOSE the case.

IT IS SO ORDERED.

Dated: **August 28, 2026**

STANLEY A. BOONE
United States Magistrate Judge

[2] If legally sufficient circumstances justify arrest without notice in advance, Respondents SHALL provide a post-deprivation hearing consistent with the requirements set forth here within seven days of the arrest. If Petitioner becomes subject to an executable final order of removal and Petitioner receives notice of such order, Respondents may detain Petitioner for the sole and limited purpose of executing removal and SHALL provide a bond hearing in the timeframe required by law.